TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

ROB BONTA
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 25-601 |
| of | : | |
| | : | June 23, 2026 |
| ROB BONTA | : | |
| Attorney General | : | |
| | : | |
| NICOLE WELINDT | : | |
| Deputy Attorney General | : | |

---

The HONORABLE ASH KALRA, ASSEMBLYMEMBER, has requested an opinion on a question relating to California's prevailing wage law.

**QUESTION PRESENTED AND CONCLUSION**

If the Director of the Department of Industrial Relations determines that the prevailing wage for a journey-level classification is the rate set by a collective bargaining agreement, and that agreement provides a separate classification for a foreperson who performs on-site work while supervising the work crew, does the Labor Code require the Director to publish the prevailing wage rate for the foreperson classification?

No. We do not reach a categorical conclusion for all forepersons, but instead evaluate the requestor's definition—"experienced workers who perform on-site work with the tools of the trade while also having responsibility for reading the plans and directing the work of the crew." The Labor Code does not require the Director to publish the prevailing wage rate for forepersons as defined by the requestor, because California's prevailing wage law does not cover supervisory work. It is individuals' duties, and not their titles, that determine whether individuals are entitled to prevailing wages, however. That means that forepersons who perform work in a covered craft in addition to performing supervisory work are entitled to wages at no less than the applicable prevailing rate for the work they perform in the craft.

1

# BACKGROUND

During the Great Depression, contractors exploited the oversupply of labor to win government contracts, recruiting out-of-market workers and paying low wages.[1] In response to these "dire economic conditions," in 1931 the California Legislature and the United States Congress each passed prevailing wage laws.[2] A prevailing wage law is "essentially a minimum wage law" for certain government contracts.[3] The laws guaranteed that workers on public building projects would be paid wages "commensurate with those prevailing in the local area."[4] The Legislature's "overall purpose" was "to protect and benefit employees on public works projects."[5] And the law's "specific goals" were to protect against the risk of substandard wages, promote efficiency through well-paid employees, "permit union contractors to compete with nonunion contractors," and provide a benefit to nonpublic employees, who otherwise have fewer benefits than public employees.[6]

Today, California's prevailing wage law is codified in the Labor Code.[7] It operates as follows. Except on certain low-cost projects, workers employed on public works must be paid wages at not less than prevailing rates.[8] "'Worker' includes [a] laborer, worker, or mechanic."[9] The body awarding the contract "shall obtain the general prevailing rate" of wages in the locality "from the Director of Industrial Relations."[10] The Director determines the general prevailing wage rate "for each craft, classification, or type of worker needed to execute" public works contracts.[11] To do so, the Director "shall

---

[1] See *Kaanaana v. Barrett Business Services, Inc.* (2021) 11 Cal.5th 158, 165-166; see also *Universities Research Ass'n, Inc. v. Coutu* (1981) 450 U.S. 754, 774 (the federal law "was intended to combat the practice of 'certain itinerant, irresponsible contractors, with itinerant, cheap, bootleg labor'").

[2] *Kaanaana v. Barrett Business Services, Inc.*, *supra*, 11 Cal.5th at pp. 165-166.

[3] *Metropolitan Water Dist. of Southern California v. Whitsett* (1932) 215 Cal. 400, 417, capitalization altered.

[4] *Busker v. Wabtec Corp.* (2021) 11 Cal.5th 1147, 1155; see Stats. 1931, ch. 397, § 1; Pub.L. No. 71-798 (Mar. 3, 1931) 46 Stat. 1494, 1494; 40 U.S.C. § 3142.

[5] *Busker v. Wabtec Corp.*, *supra*, 11 Cal.5th at p. 1156.

[6] *Ibid.*

[7] *Id.* at p. 1155; see Lab. Code, § 1720 et seq.

[8] Lab. Code, § 1771.

[9] Lab. Code, § 1723.

[10] Lab. Code, § 1773.

[11] Lab. Code, §§ 1770, 1773.

2

ascertain and consider the applicable wage rates established by collective bargaining agreements and the rates that may have been predetermined for federal public works, within the locality and in the nearest labor market area."[12] "If the director determines that the rate of prevailing wage for any craft, classification, or type of worker is the rate established by a collective bargaining agreement, the director may adopt that rate by reference[.]"[13]

In practice, the Director carries out these statutory responsibilities by listing prevailing wage rates online. Twice each year, the Director updates the prevailing wage determinations.[14] The Director lists numerous crafts—such as "Carpenter," "Cement Mason," "Drywall Installer (Carpenter)," and "Operating Engineer."[15] Within each craft, the Director may list specific classifications.[16] For example, the "Elevator Constructor" craft in Southern California includes classifications for "Mechanic," "Mechanic (employed in industry more than 5 years)," "Helper," and "Helper (employed in industry more than 5 years)."[17] Prevailing wage determinations for a given classification may cover the entirety of the State or may differ by region.[18]

Which craft or classification an individual falls within depends on the duties the individual performs. DIR publishes "Scope of Work provisions," which provide

---

[12] Lab. Code, § 1773.

[13] *Ibid.*

[14] See Department of Industrial Relations, Index 2025-2 General Prevailing Wage Journeyman Determinations, https://www.dir.ca.gov/OPRL/2025-2/PWD/index.htm (as of Mar. 11, 2026). Additionally, if a body awarding a contract thinks that a particular craft, classification, or type of worker is not covered by DIR's existing determinations, the body may request that the Director issue a special prevailing wage determination. (Cal. Code Regs., tit. 8, § 16202.)

[15] Department of Industrial Relations, Index 2025-2 Southern California Basic Trade Journeyman Rates, https://www.dir.ca.gov/OPRL/2025-2/PWD/Southern.html (as of Mar. 11, 2026).

[16] *Ibid.*

[17] Department of Industrial Relations, General Prevailing Wage Determination, Craft: Elevator Constructor, https://www.dir.ca.gov/OPRL/2025-2/PWD/Determinations/Southern/SC-062-X-999.pdf (as of Mar. 11, 2026).

[18] See Department of Industrial Relations, Index 2025-2 General Prevailing Wage Journeyman Determinations, *supra.*

3

information on duties performed within a craft.[19]  In some instances, an individual may perform work in multiple classifications on a single project.[20]

We are asked whether the Director must publish a prevailing wage rate for forepersons, where foreperson rates are listed in a collective bargaining agreement that the Director has adopted to set prevailing wage rates for other classifications.[21]  The requestor describes forepersons as "experienced workers who perform on-site work with the tools of the trade while also having responsibility for reading the plans and directing the work of the crew."[22]  According to the requestor, collective bargaining agreements may pay forepersons "a higher hourly rate than the rate applicable to journey-level workers"—that is, those workers performing on-site labor in a craft without supervisory responsibilities.[23]  The Director does not provide prevailing wage rates for forepersons, even if the Director has adopted other prevailing wage rates from a collective bargaining agreement that includes foreperson classifications.  As a result, commenters explain, nonunion contractors can underbid union contractors for public works contracts by paying their forepersons at a lower rate than the rate provided for in unions' collective bargaining agreements.  The commenters conclude that a foreperson is a "classification" needed to execute public works projects and that the Director therefore must promulgate prevailing wage rates for forepersons.

The Department of Industrial Relations has taken the position that it is complying with the prevailing wage law by not publishing a foreperson rate.  The Department does not address whether a foreperson is a "craft, classification, or type of worker."  Rather, the Department concludes that "work of a supervisory nature[,] such as that performed by foremen, supervisors, and managers, is not covered by California's prevailing wage

---

[19] See Office of the Labor Commissioner, Public Works Manual (Oct. 2023), p. 40, https://www.dir.ca.gov/dlse/pwmanualcombined.pdf.

[20] *Id.* at pp. 25, 41.  The Department of Industrial Relations explains, for example, that "[i]f a worker is performing work in the Inside Wireman's classification for four (4) hours and then performs work in the Painter's classification for six (6) hours, the worker would be entitled to no less than the total of four (4) hours of pay at the Inside Wireman's straight time rate of pay, four (4) hours of pay at the Painter's straight time rate of pay, and two (2) hours of pay at the Painter's overtime rate of pay for the two (2) hours worked in excess of eight (8) hours per day."  (*Id.* at p. 25.)

[21] Assemblymember Ash Kalra, letter requesting opn. to former Sr. Asst. Atty. Gen. Marc J. Nolan, Opn. Unit, Dept. of J., June 4, 2025 (on file), p. 1 (Request Letter).  Where possible, we adopt gender-neutral terminology:  journey-level rather than journeyman, and foreperson rather than foreman.

[22] *Id.* at p. 3.

[23] *Ibid.*

4

law."[24]  It reasons that the law covers "workers," and the statute's definition of that term—"laborer[s], worker[s], or mechanic[s]"—does not encompass "personnel in supervisory or administrative roles."[25]  But because it is "the duties performed," and not a person's "title or status," that matters, the Department concludes that forepersons performing work in a covered craft would be entitled to wages at the prevailing rate for that work.[26]  That is, if "foremen or other supervisory personnel are performing the work of a particular craft, then they must be paid at least the prevailing rate for that craft."[27]

## ANALYSIS

The threshold question—and the only one we ultimately need address—is whether forepersons, as defined by the requestor, are "workers" covered by California's prevailing wage law.[28]  The requestor defines forepersons as "experienced workers who perform on-site work with the tools of the trade while also having responsibility for reading the plans and directing the work of the crew."[29]  We describe the legal framework for evaluating this question, agreeing with the Department's longstanding view that individuals performing supervisory or managerial work are not "workers" covered by the prevailing wage law.  And we apply that framework to the provided definition of forepersons, concluding that they are not covered "workers" under the law.  We do not suggest, however, that every individual designated as a foreperson has these job duties or that the same conclusion would necessarily result for all persons designated "forepersons."  The use of "foreperson" in this opinion refers specifically to the definition that the requestor has provided and asked us to analyze.  We do not attempt to address all possible facts herein, as "[i]t is our task to examine questions of law that arise from the interplay between settled facts, which have been provided for our information, and the body of law applicable to them."[30]

---

[24] Deputy Chief Silvestre Rojas, Off. of the Director-Research Unit, Dept. of Industrial Relations, letter to Deputy Atty. Gen. Nicole Welindt, Opn. Unit, Dept. of J., Sept. 22, 2025 (on file), p. 1 (Dept. of Industrial Relations com.).

[25] *Ibid.*

[26] Public Works Manual, *supra*, at pp. 3-4.

[27] Dept. of Industrial Relations com., *supra*, at pp. 1-2.

[28] See Lab. Code, § 1771 (generally requiring payment of wages at prevailing rates to "workers employed on public works").

[29] Request Letter, *supra*, at p. 3.

[30] 92 Ops.Cal.Atty.Gen. 102, 103 (2009).  To the extent that individuals designated as forepersons have different job duties, the legal framework described in this opinion would need to be applied to those specific facts.

5

The California Supreme Court instructs us to start our statutory analysis by examining the statute's plain language, because "statutory language is generally the most reliable indicator of legislation's intended purpose."[31] "If the relevant statutory language permits more than one reasonable interpretation, we look to appropriate extrinsic sources, such as the statute's purpose, legislative history, and public policy."[32]

We thus start with the statute's ordinary meaning. Subject to a narrow exception, Labor Code section 1771 provides that "all *workers* employed on public works" "shall be paid" "not less than the general prevailing rate of per diem wages for work of a similar character in the locality in which the public work is performed."[33] Today, "[w]orker" is defined in Labor Code section 1723 to include a "laborer, worker, or mechanic." At the time of enactment in 1931, prevailing wages had to be paid to certain "laborers, workmen and mechanics."[34] Several years later, when the law was codified in the Labor Code, the law provided that wages at not less than prevailing rates "shall be paid to all workmen," and provided that "'[w]orkman' includes [a] laborer, workman, or mechanic.'"[35] These revisions, however, were not meant to work substantive changes to the prevailing wage scheme.[36] Additionally, the Legislature has, over time, revised "workmen" to "workers" and "workman" to "worker" throughout the law.[37] These changes similarly were not substantive.[38] We therefore analyze the ordinary meaning of "laborers, workmen and mechanics" at the time of enactment.[39]

Turning to each term, we conclude that the Legislature intended to cover individuals performing skilled or unskilled manual labor, not those managing or supervising others. A statute's plain meaning "would typically be a dictionary definition."[40] At the time of the prevailing wage law's enactment, a "laborer" was

---

[31] *Prang v. Los Angeles County Assessment Appeals Bd.* (2024) 15 Cal.5th 1152, 1170.

[32] *Ibid.*

[33] Lab. Code, § 1771, italics added.

[34] Stats. 1931, ch. 397, § 1.

[35] Stats. 1937, ch. 90, pp. 241, 243.

[36] *State Building & Construction Trades Council of California v. City of Vista* (2012) 54 Cal.4th 547, 555; see also Stats. 1937, ch. 90, p. 185.

[37] See Stats. 1981, ch. 449, § 1; Stats. 1999, ch. 30, §§ 1, 2, 4; Stats. 2000, ch. 954, § 2; Stats. 2017, ch. 28, § 18. Some sections still retain "workman" or "workmen." (See Lab. Code, §§ 1773.4, 1774.)

[38] *Mendoza v. Fonseca McElroy Grinding Co., Inc.* (2021) 11 Cal.5th 1118, 1130 & fn. 15.

[39] See *People v. Rodriguez* (2016) 1 Cal.5th 676, 686.

[40] *People v. Walker* (2024) 16 Cal.5th 1024, 1035.

6

defined as "[o]ne who labors," specifically "[o]ne who does physical labor," especially "a person who does work that requires strength rather than skill."[41]  A "workman" was "[a] man employed in labor, whether in tillage or manufactures; esp., a skilled artificer or laborer."[42]  And a mechanic was "[o]ne who practices any mechanic art; one skilled or employed in shaping and uniting materials, as wood, metal, etc., into any kind of structure, machine, or other object, requiring the use of tools or instruments."[43]  The three terms had similar meanings, with workman as "the general term; it frequently applie[d] to one who does relatively skilled work, as contrasted with a laborer, whose work demands strength or exertion rather than skill."[44]  While mechanic was "once synonymous with artisan," by 1931 it was "commonly restricted to a workman who [was] skilled in constructing, repairing, or using machinery."[45]  Thus, the prevailing wage law covered individuals engaging in manual labor, with the three terms referring to different types of such labor.

Today, "worker" can be used in a more expansive sense.  A "worker" is still a "laborer, toiler" and "one who is employed esp. at manual or industrial labor for a wage," but "worker" may also be used to refer to "one who works in a particular field."[46]  Adopting the latter definition would include supervisory work.  But "[u]nder the principle of *noscitur a sociis* (it is known by its associates) . . . a court will adopt a restrictive meaning of a listed term if acceptance of a more expansive meaning would make other items in the list unnecessary or redundant, or would otherwise make the item markedly dissimilar to the other items in the list."[47]  Adopting the more expansive modern definition of "worker" would make the term markedly dissimilar—much broader and more inclusive—than "laborer" or "mechanic."  The principle of *ejusdem generis* also supports adopting the narrower definition, because where there is a general term followed by a list of examples, the "general term or category is 'restricted to those things that are similar to those which are enumerated specifically,'" otherwise the specific descriptions "would be surplusage."[48]  If we adopted the broad use of "worker," then that term would sweep far beyond individuals referenced by "laborer" and "mechanic," rendering those

---

[41] Webster's New International Dictionary of the English Language (1930) p. 1201.

[42] *Id.* at p. 2350.

[43] *Id.* at p. 1338.

[44] *Id.* at p. 2350, capitalization altered.

[45] *Ibid.*, italics omitted.

[46] Webster's Third New International Dictionary (2002) p. 2634, capitalization altered.

[47] *Busker v. Wabtec Corp.*, *supra*, 11 Cal.5th at p. 1160, fn. 11, ellipsis in original and internal quotation marks omitted.

[48] *International Federation of Professional & Technical Engineers, Local 21, AFL-CIO v. Superior Court* (2007) 42 Cal.4th 319, 341-342.

7

terms superfluous. We are thus further persuaded that the Legislature intended to cover only those performing manual labor.

Case law also supports our conclusion that the law specifically covers manual labor. Shortly after the prevailing wage law's enactment, the California Supreme Court in *Whitsett* explained that the law "was intended for the benefit of the great body of laborers and mechanics to be employed on the job," including "blacksmiths, bricklayers, carpenters, concrete mixer operators, crane operators, hod carriers, iron workers—structural, reinforcing and ornamental—laborers, lathers, marble workers, mechanics, painters, pile driver men, plasterers, powder men, traction operators, truck drivers, [and] teamsters."[49] While the Court did not specifically address whether supervisors or managers are covered by the law, the Court's enumeration of specific types of manual laborers supports the interpretation that the Legislature intended to cover skilled or unskilled manual labor only.

The prevailing wage law's historical context reinforces our interpretation. "The wider historical circumstances of a law's enactment may assist in ascertaining legislative intent, supplying context for otherwise ambiguous language."[50] The prevailing wage law was a response to the Great Depression and ensured that public works projects would not simply "be awarded to contractors who hired cheaper out-of-market labor."[51] The California Supreme Court has explained that although many individuals work on a public works project, including architects and lawyers, the prevailing wage law was not designed to protect individuals doing that type of work, but was tailored to protect the "local daily wage workers" actually "hired to do the work."[52] Indeed, a California Supreme Court Justice, although dissenting on an issue not presented here, has reasoned that the definition of worker "provid[es] a clear limit" on the prevailing wage statute, as "[p]ertinent legislative history and DIR job classifications confirm that the law has generally applied only to craftspersons and manual laborers."[53]

A prior Attorney General opinion accords with that conclusion. Attorney General opinions are entitled "to considerable weight."[54] In 1949, an Attorney General opinion issued to the Department of Industrial Relations evaluated the scope of a different public works provision. In construing that provision, the opinion considered who was "covered

---

[49] *Metropolitan Water Dist. of Southern California v. Whitsett*, *supra*, 215 Cal. at pp. 415-416.

[50] *Busker v. Wabtec Corp.*, *supra*, 11 Cal.5th at pp. 1157-1158.

[51] *Id.* at p. 1155.

[52] *Id.* at pp. 1156-1158.

[53] *Id.* at p. 1181 (dis. opn. of Cuéllar, J.).

[54] *Ruelas v. County of Alameda* (2024) 15 Cal.5th 968, 974.

8

by the provisions of the Labor Code." The opinion reasoned that in *Whitsett*, the California Supreme Court had enumerated a "long list" of covered individuals, but "[o]ffice worker, professional or supervisory worker are not mentioned and we find no indication in the statute or in this case that it was the intention of the Legislature that the law was to cover this type of employee."[55]

The Department of Industrial Relations' position also supports that interpretation. The California Supreme Court has explained that while "ultimate responsibility for statutory interpretation rests with the courts, an agency's interpretation 'is one among several tools available . . .' when judging the [statute's] meaning and legal effect."[56] "An agency's interpretation is entitled to deference if it is long standing, consistent, and contemporaneous."[57] The Department of Industrial Relations reports that its "longstanding position is that work of a supervisory nature such as that performed by foremen, supervisors, and managers, is not covered by California's prevailing wage law."[58] The Department had published that position well before this request, for example in 2023.[59] And we have no reason to doubt the Department's assertion that its position has been consistent and longstanding. The Department's interpretation therefore bolsters our conclusion that the prevailing wage law does not cover supervisory or managerial work.

The Department further explains, however, that "[a] worker's title or status with the employer is not determinative of an individual's coverage by the prevailing wage laws."[60] Rather, the Department looks to "the duties performed by the individual."[61] That means that "[a]n individual who performs skilled or unskilled labor on a public works project is entitled to be paid the applicable prevailing wage" for that labor.[62] An individual who does some supervisory work but who also "performs labor on the project" would be "entitled to compensation at not less than the prevailing rate for the type of work performed."[63] Thus, while the Department concludes that supervisory and

---

[55] 13 Ops.Cal.Atty.Gen. 45, 46 (1949).

[56] *Kaanaana v. Barrett Business Services, Inc.*, *supra*, 11 Cal.5th at p. 178, brackets in original.

[57] *Ibid.*

[58] Dept. of Industrial Relations com., *supra*, at p. 1.

[59] See Public Works Manual, *supra*, at pp. 3-4.

[60] *Id.* at p. 3.

[61] *Ibid.*

[62] *Ibid.*

[63] *Id.* at pp. 3-4.

9

managerial work is not covered, forepersons are entitled to wages at no less than the prevailing rates when performing covered labor.

The U.S. Department of Labor's interpretation of an analogous federal prevailing wage law also supports the conclusion that California's law does not cover supervisory work—and that it is individuals' duties, and not their titles, that determine whether they are entitled to wages at prevailing rates. The California Supreme Court has recognized that "California's prevailing wage law is similar to the federal act and shares its purposes," entitling interpretations of the federal law to weight when interpreting California's law.[64] The federal prevailing wage law covers "laborers and mechanics."[65] The U.S. Department of Labor has by regulation provided that "'laborer or mechanic' includes at least those workers whose duties are manual or physical in nature (including those workers who use tools or who are performing the work of a trade), as distinguished from mental or managerial."[66] The agency concludes, however, that forepersons are entitled to wages at prevailing rates for the time spent on "mechanic or laborer duties."[67] The fact that the federal regime excludes supervisory work but provides that forepersons are entitled to prevailing wages for their time performing manual labor further persuades us that the same interpretation should apply to forepersons, as defined in the request, under California's prevailing wage law.[68]

The presence of foreperson classifications in certain collective bargaining agreements does not alter our interpretation of California's labor law. As described above, the Director of the Department of Industrial Relations is directed to consider collective bargaining agreements when setting the prevailing rate for a certain craft, classification, or type of work.[69] But collective bargaining agreements do not inform the threshold question of who falls within the statutory definition of a "worker," the central inquiry in these circumstances. Collective bargaining agreements therefore cannot expand the statutory coverage of the prevailing wage law. And, in any event, the

---

[64] *City of Long Beach v. Department of Industrial Relations* (2004) 34 Cal.4th 942, 954.

[65] 40 U.S.C. § 3142(a).

[66] 29 C.F.R. § 5.2.

[67] "Forepersons who devote more than 20 percent of their time during a workweek to mechanic or laborer duties . . . are laborers and mechanics for the time so spent." (*Ibid.*)

[68] While California's law additionally included "workmen" (now "worker"), we do not think that term was meant to work such a significant broadening of the regime as to cover supervisory work. (See *ante*, fns. 31-48 & accompanying text.)

[69] Lab. Code, § 1773.

statutory scheme "does not contemplate that the Department will *necessarily* adopt terms agreed to by private parties."[70]

We received comments from labor unions and others identifying policy concerns attendant to not publishing a foreperson classification. Commenters explained that failing to include a prevailing wage rate for forepersons puts unions at a competitive disadvantage: union contractors must pay the higher collective bargaining agreement rates for forepersons, but nonunion contractors need not, because forepersons are not included in the prevailing wage rates. This discrepancy, commenters argued, undercuts the prevailing wage law's goal "to permit union contractors to compete with nonunion contractors."[71] We appreciate this weighty policy concern, and observe that "[t]he Legislature can, if it sees fit, adjust the statutory definition to align with its current conception of the appropriate scope of the prevailing wage law[.]"[72]

After review of the statutory language, the statute's history and purpose, and other extrinsic sources, we conclude that the prevailing wage law does not cover supervisory work. The Director of the Department of Industrial Relations therefore does not need to publish a prevailing wage rate for the forepersons described by the requestor— "experienced workers who perform on-site work with the tools of the trade while also having responsibility for reading the plans and directing the work of the crew." When these forepersons perform work on a qualifying public works project in a covered craft, however, they would be entitled to wages at no less than the applicable prevailing rate for that craft.

---

[70] *Independent Roofing Contractors v. Department of Industrial Relations* (1994) 23 Cal.App.4th 345, 355-356, italics added.

[71] *Lusardi Construction Co. v. Aubry* (1992) 1 Cal.4th 976, 987.

[72] *Kaanaana v. Barrett Business Services, Inc.*, *supra*, 11 Cal.5th at p. 182 (conc. opn. of Kruger, J.).

11